**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180744-U

Order filed February 24, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| NICOLE McBRIDE, | ) | Appeal from the Circuit Court |
| | ) | of the 21st Judicial Circuit, |
| Petitioner-Appellant, | ) | Iroquois County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-18-0744 |
| | ) | Circuit No. 18-OP-263 |
| | ) | |
| RYAN PETERS, | ) | Honorable |
| | ) | James B. Kinzer, |
| Respondent-Appellee, | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE LYTTON delivered the judgment of the court.
Justices Holdridge and Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*: Trial court failed to apply the appropriate standard under the Civil No Contact Order Act. Denial of civil no contact order is reversed, and the cause is remanded.

¶ 2     Petitioner, Nicole McBride, appeals the trial court's denial of her petition for an order of protection against respondent, Ryan Peters, under the Civil No Contact Order Act (Act) (740 ILCS 22/101 *et seq*. (West 2018)). On appeal, she claims that the trial court erred in denying her request for a plenary no contact order by applying the statutory standard set forth in the Stalking No

Contact Order Act (740 ILCS 21/101 *et seq.* (West 2018)) rather than the standard expressed in the Civil No Contact Order Act (Act) (740 ILCS 22/101 *et seq.* (West 2018)). We reverse and remand with instructions.

¶ 3                                                     I. FACTS

¶ 4        Petitioner filed for and was granted an emergency no contact order under section 214 of the Civil No Contact Order Act. She then sought a plenary no contact order under the Act.

¶ 5        At the hearing on the plenary order, petitioner testified that she ran into respondent at Walmart on August 15, 2018. He asked her to come to his house and cut his hair. She said she was not feeling well, but that she would cut his hair later that day. She arrived at respondent house around 7:30 pm. They talked for a while, and then petitioner asked if they could get started because she "had to get going." Respondent went to the shed and plugged in the clippers. Petitioner followed him out to the shed and started cutting his hair. About halfway through, petitioner started coughing. Respondent gave her water and a Mountain Dew and asked her if she wanted to "take a hit off of his bowl." She did and immediately felt nauseous and dizzy.

¶ 6        After she finished cutting respondent's hair, she went into respondent house and vomited in the bathroom. Respondent told her to sit down for a while and rest. When she sat down, respondent put his arm around her and placed his hand on her leg. Petitioner told him that she did not want to do anything. Respondent moved his hand up her leg, and petitioner told him that she was not feeling well. She testified that respondent said, "come on, let's just try it," and started rubbing her vagina "pretty hard." He then forced her to lay down and started kissing her face. Respondent lifted petitioner's shirt up over her breasts. She pulled it down, and respondent stopped her and pulled it up again.

¶ 7 Petitioner testified that, at that point, she felt like she was going to be sick. She started to feel weak and began crying. Respondent stood up and stepped in between petitioner's legs and lifted her legs up. She told him that she felt sick and asked him to "please stop." He then dropped her legs, and she ran to the bathroom. She sat on the bathroom floor gagging and crying. After a few minutes, she got up, grabbed her phone and her keys, and left.

¶ 8 During cross examination, counsel asked, "if you were just going over to cut his hair, you could have cut his hair and left, right?" Petitioner's attorney objected to the question and the trial court stated, "Well, the underlying issue though is that this is voluntary contact—I understand your point, I think, but I need a pattern here, which frankly I don't have at this point." The court overruled the objection.

¶ 9 At the conclusion of petitioner's testimony, the trial court stated, "I can't issue a no stalking order here because there's no—I don't see any pattern of conduct." Petitioner's attorney reminded the court that the petition requested a civil no contact order, not a stalking no contact order, and that, under the statute, such orders were based solely on non-consensual sexual contact. The trial court responded:

> "I'm not going to issue it. I understand your concerns, but the pattern here is that she goes voluntarily to his house as [counsel] points out. If she didn't want to do anything she just doesn't go to his house or she leaves at any point. I'm not willing to issue a no stalking order here or a civil no contact order so the petition is denied."

¶ 10                                    II. ANALYSIS

3

¶ 11 Petitioner contends that the trial court erred by applying the incorrect statutory standard for a civil no contact order. Whether the trial court applied the correct statute is a question of statutory interpretation that we review *de novo*. *Sadler v. Service*, 406 Ill. App. 3d 1063, 1065 (2011).

¶ 12 The purpose of the Civil No Contact Order Act is to provide a civil remedy to protect victims of sexual assault from future interactions with the offender. 740 ILCS 22/102 (West 2018). Under the Act, a petition may be filed "by any person who is a victim of non-consensual sexual conduct or non-consensual sexual penetration, including a single incident of non-consensual sexual conduct or non-consensual sexual penetration." 740 ILCS 22/201(b)(1) (West 2018). The statute defines "non-consensual" as "lack of freely given agreement." 740 ILCS 22/103 (West 2018). "Sexual conduct" means "any intentional or knowing touching or fondling by the petitioner or the respondent, either directly or through clothing, of the sex organs, anus, or breast of the petitioner or the respondent *** for the purpose of sexual gratification or arousal of the petitioner or the respondent." *Id*. The standard of proof in a civil no contact order proceeding is a preponderance of the evidence. 740 ILCS 22/204(a) (West 2018).

¶ 13 The Act states that "[i]f the court finds that the petitioner has been a victim of non-consensual sexual conduct or non-consensual sexual penetration, a civil no contact order shall issue." 740 ILCS 22/213(a) (West 2018). The court may not deny a civil no contact order, in whole or in part, on evidence that (1) "the petitioner left the residence or household to avoid further non-consensual sexual conduct or non-consensual sexual penetration by respondent;" or (2) "the petitioner did not leave the residence or household to avoid further non-consensual sexual conduct or non-consensual sexual penetration by respondent." 740 ILCS 22/213(c) (West 2018).

¶ 14 Here, the trial court failed to correctly identify the issue. Petitioner filed a petition under the Civil No Contact Order Act. Under that statute, the sole issue is whether non-consensual sexual

4

conduct occurred. See 740 ILCS 22/213(a) (West 2018). The trial court, although given the opportunity to apply the correct standard, required petitioner to prove a pattern of conduct, a standard found in the Stalking No Contact Order Act. See 740 ILCS 21/5, 21/10 (West 2018) (defining stalking as "engaging in course of conduct" and "a course of conduct, not a single act"). Unlike the Stalking No Contact Order Act, the Civil No Contact Order Act does not refer to a pattern or course of conduct. See 740 ILS 22/101 *et seq*. (West 2018). Further, unlike the Stalking No Contact Order Act, the Act specifically states that a "single incident" is sufficient to prove the petition. See 740 ILCS 22/201(b)(1) (West 2018).

¶ 15    Accordingly, we reverse the trial court's order denying the petition and remand to the trial court with instructions to apply the standard under the Civil No Contact Order Act. On remand, the trial court must consider the petitioner's unimpeached and unrebutted testimony and determine whether non-consensual sexual conduct occurred on August 15, 2018, by a preponderance of the evidence. See 740 ILCS 22/204(a) (West 2018). In considering the evidence, the court should be mindful that whether petitioner chose to stay or leave respondent's residence is not relevant. See 740 ILCS 22/213(c)(6) (West 2018). If the trial court finds that petitioner was the victim of intentional touching or fondling of her vagina or breasts and she did not freely agree, the statute mandates that a civil no contact order be issued. See 740 ILCS 22/213(a) (West 2018).

¶ 16                                    III. CONCLUSION

¶ 17    The judgment of the circuit court of Iroquois County is reversed and remanded with instructions.

¶ 18    Reversed and remanded.

5